UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

IDOLTHUS HUBBARD,

                    Plaintiff,                          Case No. 2:21-cv-55

v.                                                      Honorable Paul L. Maloney

UNKNOWN MANN et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss for failure to state a claim, the following claims against

Defendants:  Plaintiff's claim under the First Amendment for interference with his right to access

the court; Plaintiff's substantive due process claim under the Fourteenth Amendment; Plaintiff's

procedural due process claim under the Fourteenth Amendment, based on his 24-hour placement

in segregation; and Plaintiff's Fourth Amendment claim for unreasonable search and seizure.

Plaintiff's First Amendment retaliation claim and his Fourteenth Amendment procedural due process claim based on the deprivation of his legal mail remain in the case.

**Discussion**

## I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Sergeant Unknown Mann, Mailroom Officer Unknown Dunham, and Mailroom Officer Unknown Kienitz.

Plaintiff alleges that on March 6, 2021, he was called to the officer's desk to retrieve his legal mail.  Plaintiff's criminal defense attorney had sent Plaintiff mail in connection with the attorney's preparation of a post-conviction motion for relief from judgment under Michigan Compiled Laws § 6.500.[1]  Defendants Mann, Dunham and Kienitz read and confiscated Plaintiff's legal mail without any justification.  Plaintiff never received a misconduct report, a notice of intent, a notice of mail rejection, or a contraband removal report explaining why his legal mail was being confiscated.  Because Plaintiff did not receive the legal mail sent by his criminal defense attorney, he could not assist his attorney with the preparation of the motion for relief from judgment.

Plaintiff complained that Defendants were violating his attorney-client privilege and MDOC policy, but they continued to read Plaintiff's legal mail.  Defendant Mann became hostile and told Plaintiff he would do whatever he wanted to do and that if Plaintiff had a problem with it then Mann could lie and say the mail had drugs in it and send Plaintiff to administrative segregation.  Plaintiff told Defendant Mann that he intended to file a grievance.  Defendant Mann

---

[1] Mich. Comp. Laws § 6.500 authorizes a defendant to file a single motion to set aside or modify the judgment of conviction. The motion must specify all of the grounds for relief which are available to the defendant and of which the defendant has, or by the exercise of due diligence, should have knowledge.  *Id.* at § 6.502.

than told the unit officers that he detected drugs in Plaintiff's legal mail and would not give it to Plaintiff.

Later that day Plaintiff was called into the counselors' office, placed in handcuffs, and escorted to administrative segregation for allegedly attempting to smuggle drugs through the legal mail sent by his attorney. Approximately twenty-four hours later, on March 7, 2021, Plaintiff was released from segregation without receiving a misconduct report, a notice of intent, a notice of mail rejection, or a contraband report.

Plaintiff alleges that Defendant Mann intentionally and maliciously lied or planted fake drugs in Plaintiff's legal mail to justify reading Plaintiff's mail, confiscating it, and sending Plaintiff to administrative segregation without a misconduct report or a notice of intent to justify Plaintiff's placement in administrative segregation nor a notice of rejection of mail, or a contraband report explaining why Plaintiff's legal mail was confiscated.

Plaintiff alleges claims for retaliation and interference with his right to access the courts in violation of his First Amendment rights, violation of his right to due process under the Fourteenth Amendment, and violation of his right to be free from illegal search and seizure under the Fourth Amendment.

Plaintiff seeks declaratory and injunctive relief and money damages.

In addition to his complaint, Plaintiff has filed a motion for temporary restraining order and for preliminary injunction. (ECF No. 3.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Retaliation

Plaintiff alleges that Defendants Mann, Dunham and Kienitz read and confiscated his legal mail without any justification and despite Plaintiff's verbal complaints that Defendants

were violating his attorney-client privilege and MDOC policies regarding legal mail. Plaintiff never received a misconduct report, notice of intent, notice of mail rejection, or a contraband report explaining why his legal mail was confiscated. Plaintiff was never given his legal mail.

Plaintiff also alleges that, when he threatened to write a grievance about Defendants reading and confiscating his legal mail, Defendant Mann threatened to lie—to claim there were drugs in Plaintiff's legal mail—and to send Plaintiff to administrative segregation. Plaintiff was eventually sent to administrative segregation where he spent approximately twenty-four hours before being released.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). But the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse

administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002).

Moreover, an inmate's right to file a non-frivolous grievance is protected, regardless whether it is written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Plaintiff contends that he complained to the Defendants that they were violating his attorney-client privilege and MDOC policies and that he intended to file a grievance against Defendant Mann after Defendants read and confiscated his legal mail without giving him a misconduct report, a notice of intent, a notice of mail rejection, or a contraband report. For purposes of this preliminary review, Plaintiff has sufficiently alleged protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an

objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

At this juncture, Defendants' confiscation of Plaintiff's legal mail without a misconduct report, a notice of intent, a notice of mail rejection, or a contraband report may be considered adverse action sufficient to support a retaliation claim. *See Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002) (noting that a number of cases from other circuits have held that confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim) (citing cases)).

Further, not only did Defendants read and confiscate Plaintiff's legal mail, but Defendant Mann caused Plaintiff to be confined in administrative segregation for twenty-four hours before he was released without a misconduct report or a hearing to justify his placement in administrative segregation. Plaintiff's confinement in administrative segregation by itself may be sufficiently adverse to support a retaliation claim. *See e.g. Herron*, 203 F.3d at 416 (allegation that prisoner was sentenced to five days administrative segregation was sufficient allegation of adverse action to support a retaliation claim); *Evans v. Vinson*, 427 F. App'x 437, 446 (6th Cir. 2011) (prisoner administered drug test and placed in administrative segregation for two days pending investigation into possible drug activity). Plaintiff's allegations are sufficient to show adverse action at this preliminary review stage.

Finally, Plaintiff alleges that after calling him to the officer's desk to retrieve his mail, Defendants opened his mail and started reading it. When Plaintiff complained that they could not read his mail as it violated his attorney-client privilege and MDOC policies, Defendants

ignored him. Defendant Mann became hostile, threatening to lie and say Plaintiff's mail contained drugs and to send Plaintiff to administrative segregation. Plaintiff's allegations are sufficient, at this juncture, to suggest that Defendants acted with a retaliatory motive given the close timing between Plaintiff's complaints and Defendants' behavior. *See Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Accordingly, Plaintiff has stated a claim for retaliation in violation of his First Amendment rights.

## IV. Interference with Plaintiff's right to access the court

Plaintiff alleges that his criminal defense attorney sent him legal mail to obtain his assistance in preparing a motion for relief from judgment under Mich. Comp. Laws § 6.500. Because Plaintiff's legal mail was confiscated and never returned to him, he was unable to assist his criminal defense attorney in preparing the motion.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id*. at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id*. at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. To state a viable claim for interference with his access to the courts, a

plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Additionally, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (Lewis changed actual injury to include requirement that action be non-frivolous).

Moreover, as this court previously observed:

> The Supreme Court in *Lewis* clearly stated that prisoners must have the right to attack their sentences both directly and collaterally. A motion under MCR 6.500 is a collateral attack of a sentence. Clearly, plaintiff cannot be denied access to the courts to collaterally attack his conviction.

*Meeks v. Lavigne,* No. 2:05-cv-193, 2006 WL 3496931 (W.D. Mich. Dec.1, 2006)

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415

9

(2002) (citing Lewis, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id*. at 415.

Plaintiff does not set forth the nature of the claims raised in his motion, what additionally information that he had, but his attorney did not, or that he suffered any actual injury because he could not assist his criminal defense attorney in preparing the motion. Moreover, Plaintiff lost no remedy because he was represented by counsel and there are no allegations to suggest that in the absence of Plaintiff's assistance his criminal defense attorney could not or did not file the motion. *See Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991) (noting that Plaintiff did not lose right to access the courts when he was represented by legal counsel (citing *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983) (once counsel is appointed, the state has fulfilled constitutional obligation to provide full access to courts)). Consequently, Plaintiff has failed to state a claim for interference with his right to access the courts in violation of his First Amendment rights.

## V. Due Process

### A. Substantive Due Process

Plaintiff asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't*

of Child. & Fam. Servs., 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power," when such conduct could lead to risk of prolonged incarceration. *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Scott v. Churchill*, 377 F.3d 565 (6th Cir. 2004) *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

To the extent that Plaintiff claims that Defendant Mann planted drugs in Plaintiff's legal mail, he fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. First, Plaintiff alleges no facts supporting his assertion that Mann actually planted the drugs; Plaintiff was never charged or found guilty of possession such drugs. More importantly, Plaintiff does not even suggest what consequences he faced because of Mann's alleged conduct, since Mann apparently did not instigate misconduct proceedings. Plaintiff makes clear that he never received a misconduct charge or any other document in which Mann falsely claimed that he found drugs in Plaintiff's legal mail. *See Cale*, 861 F.2d at 950 (the planting of evidence to support a misconduct charge that could extend incarceration violates substantive due process); *Robinson v. Unknown Schertz*, No. 2:07-CV-78, 2007 WL 4454293, *1 (W.D. Mich. 2007) (a defendant's attempt to frame a prisoner by filing a false misconduct report violates substantive due process

where the the false charges subjected the prisoner to the possibility of a loss of liberty through segregation and loss of good-time credits). A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate only "disciplinary time," not good time, for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Consequently, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. Plaintiff's substantive due process claim will be dismissed.

With respect to Plaintiff's claim that Defendants read and confiscated his legal mail and Defendant Mann placed him in administrative segregation without a misconduct report, a notice of intent, a notice of mail rejection, or a contraband removal slip, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's interest in his legal mail and could apply to Plaintiff's claim that he was placed in administrative segregation without receiving due process of law. The court therefore will consider whether Plaintiff states a procedural due process claim.

**B. Procedural Due Process**

Plaintiff claims that Defendants deprived him of his legal mail and Defendant Mann sent him to administrative segregation for twenty-four hours without due process.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty

or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Here, Plaintiff clearly has failed to offer any facts to demonstrate that his twenty-four hours spent in administrative segregation imposed an atypical and significant hardship. He does not describe anything about his time in administrative segregation that would suggest that he was subject to any hardships, let alone those that could be consider "atypical and significant . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87.

Plaintiff does, however, have a liberty interest in receiving his mail. *See Stanley v. Vining,* 602 F.3d 767, 770 (6th Cir. 2010) (citing *Procunier v. Martinez,* 416 U.S. 396, 418 (1974), *overruled on other grounds, Thornburgh v. Abbott,* 490 U.S. 401 (1989)). Moreover, Courts have

consistently held that while prison officials have a legitimate right to inspect incoming legal mail for contraband, they may not read a prisoner's incoming legal mail and must perform any inspection thereof in the prisoner's presence. *See Sallier v. Brooks,* 343 F.3d 868, 874 (6th Cir. 2003).

However, "[n]ot all mail that a prisoner received from a legal source will implicate constitutionally protected legal mail rights." *Id.* For example, mail from sources such as a county clerk, does not qualify as constitutionally protected legal mail, absent a "specific indication" on the envelope that the contents are "to be opened only in the presence of the prisoner." *Id.* at 875–78. As the *Sallier* court observed:

> Mail from a county clerk simply does not implicate a prisoner's right of access to the courts, of petitioning the government to redress grievances, or of competent representation by counsel. The administrative matters about which one generally communicates with a county clerk . . . are not the types of legal matters that raise heightened concern or constitutional protection.

*Id.* at 876.

Also, mail from professional organizations, such as the American Bar Association (ABA), is not considered constitutionally protected legal mail. *Id.* at 875. As the *Sallier* court observed:

> The ABA is a professional organization designed to support attorneys in a variety of ways; it is not an organization that has the authority to take action on behalf of an inmate . . . Given that the ABA is not a direct-services legal organization and generally does not provide legal advice and that the envelope contained no marking to alert a prison employee that it was to be opened only in the presence of the prisoner, receipt of the correspondence did not implicate constitutionally protected legal mail rights.

*Id.* (internal citations omitted).

At this juncture, Plaintiff's allegations are sufficient to demonstrate that the mail he received from his criminal defense attorney was constitutionally protected legal mail and that,

although he was present, Defendants impermissibly read Plaintiff's legal mail without due process of law.[2]  Plaintiff's allegation are sufficient to state a claim for violation of his right to procedural due process under the Fourteenth Amendment.

## VI. Fourth Amendment

Plaintiff asserts that Defendants illegally confiscated his legal mail and illegally seized him and placed him in administrative segregation in violation of his Fourth Amendment right to be free from unreasonable searches and seizures.  The Supreme Court long ago held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

In *Hudson*, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process.  *Id.* at 519, 535.  The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment.  *Id.* at 530.  The Court disagreed.

First, the *Hudson* Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security."  *Id.* at 523–24 (internal citation omitted).  The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell."  *Id.* at 526.  According to the Court, "[a] right of privacy in traditional

---

[2] To the extent that Plaintiff seeks to state a cognizable claim under the Sixth Amendment for the deprivation of the right to counsel based on the Defendant's interference with his "legal mail," the claim would fail.  Plaintiff has not alleged that Defendants' act of opening his legal mail "created any barrier to [his] relationship with counsel." *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir.2010).  To state a § 1983 claim for deprivation of right to counsel, there must be some allegation indicating an interference with the prisoner's relationship with counsel.  Here, Plaintiff makes no such allegation.

Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell[.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

The reasoning in *Hudson* applies as well to a prisoner's incoming mail. *See Thomas v. Kramer*, No. 2:08-CV-0544, 2009 WL 937272 at *2 (E.D. Calif., April 7, 2009) ("no Fourth Amendment violation when inmate not present during search of legal materials"); *Hall v. Chester*, No. 08-3235, 2008 WL 4657279 at *6 (D. Kan., Oct.20, 2008) ("[p]rison officials do not violate an inmate's Fourth Amendment rights by inspecting the inmate's legal mail, and are not required to have probable cause to search incoming mail").

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit Defendants from reading Plaintiff's legal mail and confiscating it where it raised concerns regarding institutional security. Moreover, to the extent that Plaintiff claims Defendants violated his constitutional rights by reading and confiscating his legal mail, this claim is properly analyzed under the First and Fourteenth Amendments, as discussed above. Therefore, Plaintiff does not state a Fourth Amendment claim for the seizure of his legal mail.

Plaintiff also claims that his Fourth Amendment rights were violated because prison officials lacked probable cause to confine him in administrative segregation. The Fourth Amendment protects against unreasonable searches and seizures, including warrantless arrests without probable cause. Plaintiff's claim is without merit because he was already in state custody

by virtue of his criminal convictions when Defendants allegedly "seized" him and placed him in segregation. In other words, he was already lawfully subject to all the limitations on liberty incident to arrest and imprisonment, including the possibility of confinement in segregation. Thus, transferring him from one area of the prison to a more restrictive area did not constitute a "seizure" under the Fourth Amendment, and did not require a warrant or probable cause. *Cf. Morris v. Metrish,* No. 97-1624, 1998 WL 246454, at *2 (6th Cir. May 5, 1998) ("[Plaintiff's] claim that his classification to administrative segregation was an unlawful detention in violation of the Fourth Amendment is frivolous because prisoners have no reasonable expectation of privacy in their cells."). Consequently, Plaintiff does not state a Fourth Amendment claim.

## VII.    Motion for Temporary Restraining Order and Preliminary Injunction

In his motion for temporary restraining order and preliminary injunction, Plaintiff raises the same issues regarding the confiscation of his legal mail on March 6, 2021, that he raises in his complaint. However, in his motion, Plaintiff goes on to contend that correctional officers on his unit and others are engaging in a campaign of harassment against him to prevent him from complaining about Defendants' confiscation of his legal mail and Defendant Mann's placing of Plaintiff in administrative segregation.

Specifically, Plaintiff contends that when he was released from administrative segregation and returned to his housing unit, Defendant Mann's co-workers told Plaintiff that if he complained or filed grievances against Defendant Mann he would be placed back in administrative segregation and sent to level 4 custody. In addition, Plaintiff states, correctional officer Herrman, who is not identified as a defendant, threatened to write a false misconduct against Plaintiff for insolence, after Plaintiff stopped LMF Warden Schroeder while she made her rounds and told her about Defendants illegal confiscation of his legal mail and placement in administrative segregation. Plaintiff also alleges that correctional officers on his housing unit, including Defendant Mann, who

17

is the sergeant supervisor of the unit, other unit supervisors, prison counselors and residential unit managers continue to retaliate against, threaten, intimidate, and harass Plaintiff about his complaints regarding his legal mail. Further, on March 14, 2021, Plaintiff was called out by the Facility Inspector (not a defendant) who threatened him and told him that he would not be getting his legal mail back and that if his criminal attorney kept calling Plaintiff would receive a Class II misconduct for interference with administrative rules and creating a disturbance.

Plaintiff contends that he is suffering irreparable harm and will continue to suffer irreparable harm because of Defendants' interference with his right to access the court by confiscating his legal mail and sending him to administrative segregation and the on-going harassment, retaliation, threats and intimidate by LMF employees, agents and correctional officers. For relief, Plaintiff seeks an order directing Defendants to immediately return the legal mail sent by his criminal attorney and directing Defendants to stop engaging in conduct that deprives Plaintiff of his rights under the United States and Michigan constitutions.

Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but

factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); s*ee also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943–44 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's pro se complaint that Plaintiff has a substantial likelihood of success on his First Amendment

retaliation or access to the court claims or his Fourteenth Amendment due process claim. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578; *see also D.T. et al. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (holding that, absent a showing of irreparable harm, a preliminary injunction is not appropriate, regardless of the strength of the other factors). Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction. Plaintiff's contentions that he is being harassed and retaliated against are largely conclusory and appear to involve a single item of legal mail that was confiscated on March 6, 2021, and not returned to Plaintiff.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. While Plaintiff states that there is a danger of injury because of alleged on-going abuse, his allegations are, again, largely conclusory. The Court's findings under the other three factors are dispositive of the issue; therefore, the issuance of preliminary injunctive relief is not warranted in this matter. Accordingly, Plaintiff's motion for a temporary restraining order and preliminary injunction will be denied.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the will dismiss, for failure to state a claim, the following claims against the Defendants: Plaintiff's claim under the First Amendment for interference with his right to access the court; Plaintiff's substantive due process claim under the Fourteenth Amendment; Plaintiff's procedural due process claim under the Fourteenth Amendment, based on his 24-hour placement in segregation; and Plaintiff's claim under the Fourth Amendment for unreasonable search and seizure. The following claims against Defendants Mann, Dunham and Kienitz remain in the case: Plaintiff's First Amendment retaliation claim; and Plaintiff's procedural due process claim for interference with his legal mail.

An order consistent with this opinion will be entered.


Dated:   July 8, 2021                              /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge